17-3243 from the District of Minnesota, Brittany Buckley v. Hennepin County et al. Mr. Lederman. Mr. Martin, your honors, may it please the court and counsel, my name is Zoris Lederman, I represent Brittany Buckley in this case. Ms. Buckley filed a lawsuit against Hennepin County and a number of doctors and paramedics who work for the county for subjecting her to dangerous experimentation. Without her District Court has dismissed her federal claims with prejudice and her state court claims without prejudice. We're asking for this court to to reverse that ruling and remand this case at District Court. I would like to, before getting into kind of the legal arguments, I do want to raise an issue or discuss an issue with regards to how do we classify Ms. Buckley's status while she was inside the ambulance. The District Court and the defendants and the Hennepin County defendants, they determined and claimed that this was a medical emergency situation. This was a medical case where Ms. Buckley was being provided medical care and we disagree with that assessment and the court should, in our view, consider whether this is really a case of medical emergency or something else. Our view, Your Honor, is that Ms. Buckley was under civil commitment in this case, similar to other people in other cases that this court has considered dealing with civil commitment. And the reason for that is because when the police officers called an ambulance for her, this was a safety issue. They wanted to take her into custody to put her on one of these 72-hour holds we have here in Minnesota so that she can be The reason why she received any medical care in this case is exactly because she was illegally sedated, which caused her to suffer respiratory failure, which then resulted in the need for medical care. Beyond that, this is a person who was civilly... Counsel, this is Judge Loken. Is it undisputed that she had a blood alcohol rating of over .3?  All right. And you say that that's not a medical situation? Your Honor, I'm not saying that being that intoxicated is not a medical risk. What I'm saying, Your Honor, is that... ...isn't medical assistance, including sedation if it's needed. Your Honor, what I'm saying is that under the facts of this case, the sole role the paramedics were there to provide was to transport Ms. Buckley from her apartment to the hospital where she was going to be civilly detained. Yes, she was very intoxicated. And yes, that could be considered the medical emergency. But what they were doing in this case is simply transporting her from her house to the hospital where she was going to be detained. Counsel, what establishes that? What limits their responsibility in that scenario to just being haulers? I mean, they're trained to provide emergency assistance medically. What in this record establishes that their sole obligation was simply to load her up and take her to a location? Your Honor, I'm not saying that that was their sole responsibility. And if there was some sort of need for medical care, of course, they would have provided that and they had a duty to provide that. But once again, if we look at the record of the complaint and what actually happened here, they were there to transport her. They put her on a you know, they took her out of the house. They put her on a gurney and they were going to drive her to the hospital. There wasn't any medical care needed other than to bring her there and take her to detox where she could hang out. And if I recall correctly, wasn't wasn't there facts to indicate that when they arrived, she was in a state of extreme agitation? No, Your Honor, that's actually the opposite. That was when the police were there. No, no, Your Honor, the complaint actually alleges the opposite, that she was never in a state of extreme extreme agitation. The complaint states that she was verbally resisting. She didn't want to leave her house, but that she never physically resisted. She never kicked. She never punched anyone. She never tried to run away. Yes, she was verbal. She was making a verbal protest about I don't want to go. But when the police officers and the paramedics physically grabbed her, the complaint states otherwise, that she was physically compliant and that she never engaged in any sort of physical abuse or aggression or resistance. Isn't that your better argument that there was no rather than whether there was medical emergency, that there was simply no need for sedation in this situation, given what's pled and that the district court erroneously relied on the ambulance report to to this issue that she was physically resisting? Absolutely, Your Honor. I pointed the issue of civil commitment because because many cases where a constitutional violation is alleged, we have to stick the person into some kind of a category. Are they a pretrial detainee? Are they an arrestee or are they civilly committed or are they a prisoner? And that's why I brought that issue up. But yes, absolutely. The the the case hinges that her whole case hinges on the point that Your Honor pointed out that there was no need to sedate her in the first place because pursuant even to the to the ambulance record, even though the paramedics are claiming in their narrative that she was being physically abusive towards them. Number one, she denies that per the complaint that's been filed in court. And number two, the court looks at the ambulance record, which is page 76 of our appendix. The paramedics themselves rate her at a negative two on this on this mental scale. We're here on a 12B6, right? Yes, Your Honor. No, we're here on a judgment on the pleadings. Oh, yes. And that that's so so the ambulance. I assume the ambulance. Well, maybe the ambulance report was attached to your complaint. That's yeah, that's the question. But a judgment on the pleadings of judgment on the pleadings in order to satisfy the Supreme Court's command that qualified immunity be done first can include lots more than the complaint. The briefs don't really address how politically, how procedurally the record was was put together here. But I'm assuming that everybody understood there was more than the complaint on which to base for the court to base its decision. Am I wrong? No, Your Honor. You're correct. So our complaint had a number of exhibits. Our complaint did not include Miss Buckley's ambulance run. She that that was simply for her privacy. But it did reference it. So the complaint does discuss in detail the ambulance medical record. And then once we were doing the briefing that actually was provided as an exhibit to the court and the plaintiff, the appellant, we don't object to the district court or this court actually considering that document. But again, she disputes the allegations that she was physically aggressive towards anyone. That's disputed. So this court could not have relied on that on that allegation by the paramedics and assumed it to be a factual issue where there is a clear dispute because she says that she never hit her or tried to resist. And number two, the medical record does indicate that she was minus two on this mental alertness scale when she was sedated. We're at a point where this, Judge Logan, again, I was going to ask you whether you agree with the statement in the appellee's brief that at one point that the district court asked about the video camera or the evidence that was apparently available. And you or someone on behalf of the plaintiff said, oh, it's not necessary that you see that. Is that right? Your Honor, I didn't say that it wasn't necessary. What I told the district court is if the district court wants to see it, I'll submit it. That's what I offered. And it wasn't requested. So I don't typically attach videos to complain. You're talking about a dispute where where there's there's highly relevant apparent what's likely to be highly relevant evidence. And you didn't bother to submit it. And now you now you fault the district court for for signing with the, you know, taking the side of the issue that you don't like. Your Honor, I'm not faulting the district court for not considering the video. I offered the video to the district court. District court said the court didn't want to see the video. The Hennepin County also had the ability to request for the video to be produced. And they had the video. Wait, wait, wait. You just said you offered it and the court didn't want it. I thought the converse was just the converse. The court asked about it. And you said, I don't think it's necessary. Are you? I'll submit it if you want me to. You know, that's night and day. Those two. Right. So when the district court asked if there is video, I admitted that there was video. And I offer it to provide it to the district court asked for. I didn't say I'm not going to give it to the district court. And I didn't say that I would. And at any event, the video is now part of the pleading. So, frankly, the district court couldn't look at the video anyway, because it wasn't submitted as part of the complaint. And it wasn't submitted by any party. Counsel, you can amend the pleadings right on the spot for a judgment on the pleadings. Something that could have been attached to the to the pleadings and wasn't. And the court asked about it. Either side could ask, ask the court for leave to add it, add it to the pleading as an appendix or addendum and have that included in the record. Your Honor, I, I'm not disagreeing with that. I'm simply saying that our allegations and the complaint are not inconsistent with the video. Hennepin County had the same video. If Hennepin County felt that our allegations are contradicted by the video, then surely the county would have offered that video as well. I'm simply saying that the video isn't necessary for the court to issue a decision in this case. Either way, because it doesn't. The video doesn't contradict our allegations in the complaint. And I'll just leave that issue that. This is just Smith. What is your complaint allege about the the nature of the role that the paramedics played with a law enforcement or were they medical service providers? Oh, this, Your Honor, goes back to this issue of how do we classify Miss Buckley status? Our view is that they're not law enforcement officers and that they're not medical personnel. Our view is that they're civil commitment officials. There are people that were in charge of holding her in civil commitment for the duration of the time that she was in the ambulance. That's our argument of what role they played. What's your legal authority for classifying him with with that particular description? Two cases, Your Honor. Both sides in their briefing. The first one is Andrews versus near. It talks about how do we categorize people who are not in jail and who are not in prison, who are not charged with a crime, but nonetheless, they're detained. And also sent the hogging versus good. No case dealing with a sex offender. Civil commitment. Both of these cases are in a briefing and both these cases support our position, Your Honor, that that Miss Buckley was civilly committed. And that's how she should be treated for determining her legal claims. You're in your rebuttal time. You can continue if you like, or you can reserve all your honor. I'll I'll reserve the two minutes. Thank you. Mr. Franson. Good morning. May it please the court. Counsel. What I would like to do first is address this issue about the video. So, first of all, I started with the county after this case had already been argued. The person who argued this case and made decisions about it is retired from the county. I would love. I wish that this video was a part of the record. But to the court's question about whether or not the court asked for it and what was said at the hearing, I would refer the court to Hennepin County's appendix. Page 89. This is a part of the transcript during oral argument of the Rule 12 motion. Down at the bottom. I'm just going to read this. The court asked just quickly, Mr. Leiterman, the videotape that's referred in the complaint. Is that something that is available? Well, first of all, in your view, would that be embraced in the pleadings? And if so, where is it? Mr. Leiterman responded. It is embraced, Your Honor. And I have it. And I've shared a copy with the county months ago. They asked for it. So everyone has it. The court responded. Do you think the court should have it or not? Mr. Leiterman responded. Your Honor. I don't believe it's necessary for the court to have the video. If Your Honor would like it, I'm happy to provide it. The court responded. We'll proceed without it. So we are in, we're in a position here where the, the Ms. Buckley is making claims about what did or what didn't happen when police officers and paramedics responded to the scene in paragraph 37 of the plaintiff's complaint. That said the plaintiff's appendix or the appellant's appendix, page 21, page 37 does in fact, refer to the body camera video and make several statements about what is supposedly that video shows with respect to these claims by Ms. Buckley, that she was not physically resisting. She was not trying to head butt people. She was not trying to bite people as set forth in the ambulance run report. The court, I believe rightfully concluded that those claims are not well pled under the Iqbal case for the reasons that she was blew a point or her blood alcohol or blood alcohol content when she got to the hospital was found to be a 0.304, which is close to four times the legal limit for driving in Minnesota. So because Ms. Buckley was extremely intoxicated, was depressed, was arguably suicidal, or at least made such claims to her friend and her mother. I believe the court rightly concluded that those recollections Ms. Buckley had about her encounter with paramedics and police were not well pled. So thank you for that. Allow me to respond to that immediately. Judge Loken, you had also asked the question about in response to counsel's claim right off the top that this was not a medical emergency. And you asked the question and you sounded skeptical. And I'd like to at least answer that question, Your Honor. I think there is no doubt that this was a medical emergency. It wasn't a medical emergency created by the Minneapolis Police Department. It wasn't a medical emergency created by the Hennepin paramedics who responded. Instead, one of Ms. Buckley's friends called 911 and wanted someone to do a welfare check on her because they're concerned about her safety. And what they found when the police and paramedics arrived was Ms. Buckley, who was very intoxicated, noted she'd been drinking for approximately two days. She did note to the police officers, or at least the police officers wrote in the report, that she had told people that she was depressed about the death of her father two years previous. She had told her mother and her friend that she was suicidal. Under these circumstances, I don't believe the Minneapolis Police Department or Hennepin EMS had any alternative but to, which placed her under a 253B hold for her safety, take her to the hospital for medical care for her safety. And that's what they did. The problem was Ms. Buckley didn't want to go voluntarily. Despite given several opportunities to go voluntarily, as is noted in the complaint, she had several verbal outbursts, refused to go, and so she was taken against her will into the ambulance. It was at that time that, yes, she was given an injection of ketamine, which is a legal sedative. It's not an experimental drug. It's a legal sedative that she was given. And if we just go by what the complaint says, it was given because of these verbal outbursts. Counsel, what was the medical justification for the use of ketamine when her status numbers were not really in range for the use of a sedative? That's a good question, Your Honor. Initially she was given this rating of a plus 2 on this AMS scale, which I think refers to someone who's having outbursts, is acting somewhat erratically. The plaintiff claims that that number, that plus 2, that AMS number, spontaneously dropped to a minus 2. As I noted at footnote in our brief, I'm not necessarily sure that the paramedics placed the information into their report necessarily means that's when it all happened. I think it's certainly possible that she went from a plus 2 to a minus 2 only after she was given ketamine. Well, that may be possible, but at this point at the pleading stage, aren't we obligated to go with what's pleaded? We are, Your Honor. If we assume that's the case, that she did, in fact, spontaneously drop to a minus 2, given the verbal outburst that they do plead in the complaint regarding her behavior, I think it was reasonable force because there was no guarantee given her previous behavior, given her condition, that she was going to stay a minus 2, that she was not going to continue verbal outbursts or, as the paramedics said, continue fighting against these physical restraints. But if we just assume what's pled, I don't think there's any guarantee that she was going to stay at a minus 2. And so the decision was made to give her the sedation so that they could keep her under control and keep her calm until she got to the hospital. Was there any precaution taken or any concern about the interaction of the sedative with someone in that extremist state of intoxication? Well, Your Honor, I would imagine, and of course this hasn't been litigated or briefed at this point, but I would imagine that the paramedics take these things into consideration, exercise medical judgment, and know whether or not a sedative like ketamine can be given to someone in this intoxicated state. I would assume that given the fact they did give that injection that there must not be some kind of a big concern, a side effect that they're concerned about. Then instead, they did intubate her, they did continue to provide care to her, and she was taken to the hospital, ultimately discharged the next day. In this case, wasn't their judgment taken away from them? That's my concern. The doctors who ran this experiment once, if you believe what the complaint says, discovered there's a 10 times better chance of intubation using ketamine than Haldol. Doesn't it get close to the level of deliberate indifference to run that same exam again, more or less treating her as a guinea pig and taking away the judgment of the ambulance drivers? Maybe this is a situation where Haldol would have been the better one, but because they're in the midst of this experiment, they're forced to use ketamine. Your Honor, I would take issue with some of that just a little bit. One, I'd call this a study, and that might be semantics, but I don't use the word experiment because I know there are some cases cited by the appellant and the deliberate indifference section that do talk about experimental radiation, plutonium, ingesting large quantities of marijuana, et cetera. I think those are separate cases. Those are certainly what I would classify as experimental. In this case, Your Honor, I would respectfully refer to this as a study because we're dealing with sedatives, ketamine, midazolam, and other sedatives that are approved for use, are used widely in this country to sedate people. And Your Honor, you're correct. Ketamine has been shown in these studies to have a higher incidence of some of these side effects, including the need for patients to be intubated, extra salivation, sort of some other side effects. But I think what that goes to, Your Honor, is medical discretion, medical decision-making, and I also note that ketamine wasn't the only sedative that these paramedics were permitted to use during this part of the study. As we note and as the study says, ketamine was the first line, not the only line. And as the court, I think, rightly showed or observed in Judge Erickson's order, that previous study that the appellants also referred to notes that 5% of So first line, not necessarily, and I don't believe it was the only line. So there was medical discretion. There was medical decision-making that was allowed to be taken. But in the first line, they're going to get ketamine, right? That is correct, Your Honor, for that period of time. No judgment, no judgment about the use of another during that six-month period, maybe another after ketamine, but not initially. I think that is consistent with what the study shows. But I think it's important to say it's not the only. But I also say, Your Honor, the study didn't strip anybody from medical decision-making. So I don't want to concede because I don't think it's true. Go ahead, Your Honor. Doesn't it, in the first instance, it had to be ketamine, the first sedative given had to be ketamine, so the ambulance drivers were strict of their medical judgment? Well, they had the judgment about whether or not it was appropriate to use it, and I think that's important. Okay, well, that brings me back to another question. You said the district court was correct to say that her pleadings about not resisting were not, quote, well pled. Yes. What do you rely on for that? I understand she was drunk, but generally we have to accept the pleadings the way they are, and we can't make judgments at this point about whether they're credible or not. I don't disagree with that, Your Honor. I was simply referring to the district court's judgment on that. But I think even if we assume— But you support it. So tell me what case supports that. Well, the key word is plausible, not credible. Yeah. And the failure to attach the video to tracks from plausibility. Well, I'd like to hear counsel's answer. Yes, and I think Judge Lowe can raise a good point. Thank you. This has to go to plausibility. Do they make a plausible claim? Do they make a plausible—do they have a plausible claim under the Fourth Amendment? Your Honor, I— You're relying on it, Paul. Yes, she did, Your Honor. And I guess what I would say, Your Honor, is I guess we talk about—a lot of these cases talk about these deliberate indifference cases or these bodily integrity cases talk about a competent adult having the right to consent to medical treatment. I know of no law, I know of no cases, so I can't cite you any, that would say that someone with a .304 blood alcohol content who might also be arguably suicidal or has at least told people that, that that is a competent person who has the right to consent or decline medical treatment. So if she's not competent to do that, if she can't sign a contract, if she can't do a codicil on her will under those circumstances, I certainly don't know that she's competent to consent. And so I—that's why I would say I don't disagree with— Well, I see the question a little bit differently. I see it more as, is she—was she competent to be able to testify that I simply was not resisting and they gave me ketamine? And, Your Honor, even if we—and for purposes of this argument, I'll concede that that may be, in fact, true. But I still think, and you may be right, but I would still say, given the verbal outburst, given the fact that she wouldn't leave her apartment and go to the hospital under what everybody agrees was a perfectly appropriate and legal medical transportation hold, she had to be taken. I don't think anybody disputes that. And also everybody agrees that she was—wouldn't leave voluntarily. She had to be forcibly removed. She was out having outbursts. I think under those circumstances, if we take that as they've pled them, I know of no reason why giving a sedative was not appropriate at that time. Now, Your Honor, I guess what we'd be talking about here, too, is the difference between a Fourth Amendment claim under 1983 and a medical malpractice claim. If it's really going to come down to medical judgment, did they exercise correct judgment, that's a medical malpractice claim. I don't think that gets us to the Fourth Amendment 1983 excessive force claim. I think we've got two separate things here. If we're just talking about a patient who's taken under a 253B medical transport hold and Ms. Buckley has a problem with the kind of sedative that was given or the circumstances under which that sedative was given, to me that's a medical malpractice claim. That's medical judgment. It's not excessive force under the Fourth Amendment. I see I've got about 35 seconds. I haven't addressed a lot of the other things that are in our briefs. Unless there are other questions, I'll rely on the briefing at that time and, again, ask that this court respectfully affirm the district court's decision. Thank you. Thank you, Mr. Franzen. Mr. Lederman, your rebuttal. Thank you, Your Honor. Your Honor, there's a couple points I want to make here really quick. First of all, the deliberate indifference claim, that's defined as deliberate indifference to a substantial risk of harm. To prove that claim, a plaintiff typically has to show that the risk of harm was known, that the defendant knew of the harm and that disregarded it. Your Honor, I point the court to page number 68 of our appendix. This is a research study that the very same defendants that we're suing published in 2012. Here's what they say. We would advocate that ketamine not be the chemical solution for every unruly or malignant subject, as this would lead to overuse with unnecessary risk. Your Honor, this is a tactical case of deliberate indifference. They knew what they were doing back in 2012. They confirmed that in the first study, before Ms. Buckley's study, where they saw that they had a 40% chance of respiratory failure due to ketamine and a 50% chance of complications versus only 5% with the other medication, and they subjected her to this anyway. Number two, the court should not lose sight of what was actually happening in the ambulance when she was sedated. She was in the ambulance. She was fully restrained. And she alleges in her complaint that she was not resisting or fighting against the restraints. This is a person who, according to their own medical records, is at a negative 2 now, at a semi-conscious state. And this is when they choose to sedate her, when she's semi-conscious, on the gurney, fully restrained, and offering no physical resistance. Counsel, Judge Logan, can I? Yes, Your Honor. Is this a deliberate indifference? It's an 8th Amendment claim, 4th Amendment claim, 1st Amendment claim. It's got to be. Deliberate indifference is not in the Constitution. Yes, Your Honor, and this is why I started talking about this issue of... What is it? Is this substantive due process, or is it 4th Amendment or 8th Amendment? It's the 14th Amendment, Your Honor. It's a 14th Amendment due process claim. Lisa, it's a substantive due process, shocks to conscience claim. Yes, and because she was civilly committed... Deliberate indifference does not trump the shocks to conscience Supreme Court requirement for substantive due process, right? And our position, Your Honor, is that the conduct here does shock the conscience. To take a woman who is restraining... Well, I understand that, but you haven't put it in those. You've tried to shoehorn this into either 4th Amendment or 8th Amendment jurisprudence. The Nelson case, for example. Yes, Your Honor, because pursuant to this court's precedent, Andrews versus Muir, a civilly committed person's rights are viewed under the 14th Amendment, and a civil commitment 14th Amendment claim tracks the deliberate indifference standard. Again, pursuant to Andrews and Cindy Hawkins versus Goodenow. Those courts may very well have written too casually on that, but anyway, we'll look at it. If it's 8th Amendment, fine. It's civil commitment that someone in... If it's substantive due process, which I think it has to be, it has to satisfy the shocks to conscience test, at least in the 8th Circuit. Your Honor, for deliberate indifference claim, it does not. If the court looks at Andrews and Cindy Hawkins, if a pretrial detainee pursues a deliberate indifference claim, the shock to conscience test does not apply. And this court has held that individuals who are civilly committed are to be treated as pretrial detainees based on this case law. I'm out of time, Your Honor, so unless you have any questions, we would ask for the court to reverse and send this case back to district court. Thank you, Mr. Lederman, and thank you also, Mr. Franson. Court appreciates your presence before us this morning and providing argument to us in relation to the issues in this case. And we thank you also for the briefing which you submitted, and we'll take your case under advisement and render a decision in due course. Thank you.